```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


CANON U.S.A., INC.,              )
                                 )
      Plaintiff,                 )
                                 )
            v.                   )     1:03cv1192 (JCC)
                                 )
LEASE GROUP RESOURCES, INC.,     )
                                 )
      Defendant.                 )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on: (1) Canon's March 11, 2005 motion to modify the Court's Payment Order to permit Canon to deduct from future payments to LGR $108,295.88; (2) LGR's March 22, 2005 motion to hold Canon in contempt; and (3) Canon's April 1, 2005 motion to modify the Court's Payment Order to use funds payable to LGR to pay LGR's obligations to the Special Master in Civil Action No. 01-1086-A, and thereafter to deposit remaining funds payable to LGR in the registry of the Court.  For the reasons stated below, the Court will deny Canon's motions to modify the Order and grant LGR's motion to hold Canon in contempt.

### I. Background

This case arises out of leasing transactions between Canon, LGR, and the federal government.  Plaintiff Canon U.S.A., Inc. ("Canon") sells and leases photocopier equipment, facsimile machines, and other products to federal agencies.  Defendant

Lease Group Resources, Inc. ("LGR") is a lease finance company. It purchases equipment that distributors, like Canon, have leased to end-user customers, in exchange for the assignment to LGR of lease payments.

Canon and LGR have entered into several thousand transactions. Federal agencies leased the equipment from Canon. LGR purchased, or committed to purchase, the equipment covered by the leases from Canon. Thereafter, LGR collected the monthly lease payments from the federal government lessees.

In July 2001, Canon brought this suit against LGR to collect, *inter alia*, approximately $4.7 million allegedly owed by LGR for maintenance of the equipment. In February 2002, the parties entered into a settlement agreement which resolved their disputes and dismissed the litigation.

After disputes arose between the parties, Canon and LGR agreed to submit the remaining accounting issues to a Special Master. On May 23, 2003, Judge Hilton entered an Order referring the matter to the Special Master. On September 17, 2003, Canon filed this suit for, *inter alia*, breaches of the settlement agreement and fraud.

On December 2, 2003, LGR filed a motion for preliminary injunction seeking to prevent Canon from receiving or retaining any payments from Document Automation and Production Service ("DAPS") under a modified agreement that were payable to LGR

prior to the modification. On December 8, 2003, the Court entered an Order staying this matter pending the report of the Special Master.

On December 23, 2003, the Court entered an Order, ("Payment Order,") denying the preliminary injunction, but requiring Canon to remit 77% of each payment it receives from DAPS to LGR within 11 days of the receipt of payment, and account for the payments from DAPS and the payments made to LGR. By Order entered January 21, 2005, ("Modification Order,") the Court required Canon to remit payments to LGR on the 1st and 15th of each month that include all LGR funds received by Canon up to and including 21 days before the payment date, and to list all invoices Canon disputes as not owing to LGR.

On March 11, 2005, Canon filed a motion to modify the Court's December 23, 2004 Payment Order, as modified by the Modification Order. Canon seeks modification of the Order to permit Canon to deduct from future payments to LGR $108,295.88 which Canon alleges that LGR was not entitled to receive. LGR opposes the motion and makes its own motion to hold Canon in contempt for allegedly engaging in self-help and unilaterally withholding $56,265.20 belonging to LGR. On April 1, 2005, Canon filed a motion to modify the Payment Order to use funds payable to LGR pursuant to the Payment Order to pay LGR's obligations to the Special Master in Civil Action No. 01-1086-A, and thereafter

to deposit remaining funds payable to LGR in the registry of the Court pending the conclusion of proceedings on the Special Master's report in Civil Action No. 01-1086-A.  These three motions are currently before the Court.

## II. Standard of Review

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party from a final judgment, order, or proceeding if it is no longer equitable that the judgment should have prospective application, or for any other reason justifying relief from the operation of the judgment.  Fed. R. Civ. P. 60(b)(5)-(6).  As set forth in *Transp., Inc. v. Mayflower Servs., Inc.*, "[t]he decision to grant Rule 60(b) relief from a final order is committed to the sound discretion of the district court and can be reviewed only for abuse of that discretion."  769 F.2d 952, 954 (4th Cir. 1985)(internal citations omitted).

**B. Civil Contempt**

To hold a party in civil contempt, the following four elements must be established by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc*, 218 F.3d 288, 301 (4th Cir. 2000) (citing *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F.

Supp. 1397, 1405-06 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)).

A court may "impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988) and citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). Although courts have broad discretion in fashioning remedies for civil contempt, which include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees," remedies and sanctions must be limited to either a remedial or compensatory purpose. *Id.* at 259; *see also Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975)(explaining that "[c]ivil contempt . . . is 'wholly remedial[,]' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance")(citations omitted). Otherwise, a court, by venturing beyond the realm of compensatory or coercive remedies, *i.e.*, imposing punitive fines or sanctions "intended to vindicate the authority of the court," *id.*, will transform the proceeding into one for criminal rather than civil contempt. *See Carbon Fuel*, 517 F.2d at 1348 (giving no weight to fact that "proceedings were begun and designated as a civil

contempt proceeding," and instead holding that "nature of the fine imposed determines the character of the proceedings without regard to the characterization of the proceedings, either procedurally or substantively, as made by the parties themselves")(citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

### III. Analysis

**A. Canon's motions to modify**

Canon's March 11, 2005 motion seeks to set off from future payments $108,295.88 that it paid LGR pursuant to the Court's Payment Order for 33 photocopiers in Silverdale, Washington, that Canon claims belong to Canon, not LGR. Canon claims that the copiers were ordered under DAPS purchase order SA7065-01-F-0023, Modification P00002-1P03, which is one of the disputed leases that belongs to Canon pursuant to Article 8 and Appendix 11 of the parties' Settlement Agreement. LGR claims that the equipment is not on a disputed lease.

LGR has billed DAPS $14,066.40 per month for these copiers, and DAPS has paid Canon ten payments, or $140,644.00 for them. Canon has paid 77% of the payments it received from DAPS, or $108,295.88, to LGR on these copiers pursuant to the Court's Payment Order. This is the amount that Canon seeks to offset from its future payments to LGR.

Article 3.4 of the settlement agreement provides:

> Canon and LGR each acknowledges that it may have received Lease Payments from Lessees due and owing to the other.  LGR and Canon each agree to cooperate with each other to develop pursuant to Section 3.6 below within 90 (ninety) days after the execution of this Agreement, a complete, current and accurate list of all lease payments held by Canon and all lease payments held by LGR under any Lease that is or was the subject of a transaction between Canon and LGR (respectively, the "Lease Payments Held by Canon" and "Lease Payments Held by LGR").

(Article 3.4).

Under the settlement agreement, LGR has forfeited its rights to any payments on the disputed leases.  (Art. 8.1.2.2). A list of disputed leases is attached at Appendix 11 of the Settlement Agreement.  Articles 8.1.2.4 and 8.1.2.5 direct LGR to remit payment of lease payments on disputed leases to Canon.

Article 4.3.1 requires LGR to pay to Canon, "the dollar amount of Lease Payments held by LGR; **PLUS** the dollar amount of payments held by LGR that are owed to Canon pursuant to . . . Section 8.1.2.4."  "Lease Payment" is defined in the as "the payment, by check, electronic funds transfer or other means of payment, made by or on behalf of the Lessee payable to Canon or LGR, as the case may be, under the terms of the Lease."  (Article 1.2.12).

Judge Hilton's Order of Reference directs the Special Master to verify and account for "all transactions necessary to prepare and reconcile . . . (ii) the schedule of Lease Payments Held by LGR described in Article 3.4 of the Agreement (including

all payments described in Article[] . . . 8.1.2.4 of the Agreement); (iii) the schedule of Lease Payments Held by Canon described in Article 3.4 of the Agreement . . . ."  (Order of Reference, Hilton, J. at 2).  The Court's Order staying the matter explains that the calculation of the amount under Article 4.3.1 of the Settlement Agreement has been referred to the Special Master.  (*See* December 8, 2003 Order at 8).

The Court held on October 6, 2005 that Canon was not entitled to set off certain amounts LGR received on two disputed leases under 8.1.2.5 because those amounts were being considered by the Special Master.  However, the Special Master is not considering lease payments on equipment not on a disputed lease.  These are payments that Canon has received from DAPS and which Canon must now remit 77% of to LGR under the Court's Payment Order.

Since it is unclear whether the equipment in question was on a disputed lease, and resolution of payments on the disputed leases has been stayed pending the report of the Special Master, the Court will deny Canon's March 11, 2005 motion to modify the Payment Order.  The Special Master's Report should determine whether the equipment in question is on a disputed lease.

Canon's April 1, 2005 motion to modify seeks to allow Canon to use funds payable to LGR pursuant to the Payment Order

to pay LGR's obligations to the Special Master in Civil Action No. 01-1086-A, and thereafter to deposit remaining funds payable to LGR in the registry of the Court pending the conclusion of proceedings on the Special Master's report in Civil Action No. 01-1086-A.  The Court refuses to interfere with the proceedings in Civil Action No. 01-1086-A and will deny Canon's April 1, 2005 motion to modify the Payment Order.  Until such time as the Special Master's Report is received, the Court declines to modify its Payment Order pursuant to either party's present or future requests unless there is extraordinary good cause shown.

**B. Civil Contempt**

In its March 11, 2005 motion to modify, Canon leads the Court to believe that it has not yet deducted the amounts it seeks to offset.  However, LGR has provided documentation showing that Canon has indeed already engaged in self-help by deducting a portion of the amount that it seeks to deduct in the future. (*See* LGR's Opp'n, Ex. 2).  Exhibit 2 consists of two email exchanges between Carolyn Grant, Credit Manager of Canon's Government Marketing Division, and Rick Carter at LGR.  Grant's email of March 4, 2005 states that Canon has withheld payments related to the equipment on lease SA7065-01-F-0023 P00002-1P0, the equipment that is the subject of Canon's motion to modify. The attachments to her March 4, 2005 email show that Canon deducted $14,066.30 for the equipment on each of invoices 51952,

52779, and 54243.  The attachment to her March 18, 2005 email shows that Canon deducted $14,066.30 on invoice 54658.  Thus, Canon has already deducted $56,265.20.

Because Canon has once again engaged in self-help, LGR seeks to have Canon held in contempt.  LGR seeks the $56,265.20 and the attorneys fees it has incurred in responding to the motion to modify.

As the Court explained in its Memorandum Opinion dated October 6, 2004, withholding amounts that Canon believes it is entitled to withhold before the Court modifies its Payment Order is considered self-help and prohibited.  *See Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3d Cir. 1982)(where party could have filed a motion to Rule 60(b), but instead engages in self-help, the trial court was left with "no alternative except restoration of the status quo ante bellum by a coercive contempt order").

Canon must comply with the Court's Payment Order, until such time as the Court modifies the Order.  The Court refuses to modify the Payment Order.  Accordingly, the Court will hold Canon in civil contempt and order Canon to remit to LGR the $56,265.20 it has withheld for payments on the 33 photocopiers.  The Court will also order Canon to pay LGR the reasonable attorneys fees LGR has incurred in responding to Canon's motion to modify.  This includes the attorneys fees in connection with LGR's motion to

hold Canon in contempt as this motion was necessitated by Canon's self-help measures.

### IV. Conclusion

For the reasons stated above, Canon's March 11 and April 1, 2005 motions to modify the Payment Order are denied, and LGR's motion to hold Canon in civil contempt is granted. An appropriate Order will issue.

```
April_19, 2005                    __/s/ James_C. Cacheris_____
Alexandria, Virginia              UNITED STATES DISTRICT COURT JUDGE
```