```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


CANON U.S.A., INC.,             )
                                )
      Plaintiff,                )
                                )
            v.                  )     1:03cv1192 (JCC)
                                )
LEASE GROUP RESOURCES, INC.,    )
LOUIS ROGERS                    )
      Defendants.               )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff's motions for partial summary judgment and to dismiss counterclaims, and Defendants' cross-motion for summary judgment. For the reasons stated below, the Court will deny Plaintiff's motion for partial summary judgment, grant Defendants' cross-motion for summary judgment, and grant in part and deny in part Plaintiff's motion to dismiss.

### I. Background

This case arises out of leasing transactions between Canon, LGR, and the federal government. Plaintiff Canon U.S.A., Inc. ("Canon") sells and leases photocopier equipment, facsimile machines, and other products to federal agencies. Defendant Lease Group Resources, Inc. ("LGR") is a lease finance company. It purchases equipment that distributors, like Canon, have leased to end-user customers in exchange for the assignment to LGR of lease payments.

Canon and LGR have entered into several thousand transactions.  Federal agencies leased the equipment from Canon.  LGR purchased, or committed to purchase, the equipment covered by the leases from Canon.  Thereafter, LGR collected the monthly lease payments from the federal government lessees.  In July 2001, Canon brought suit against LGR to collect, *inter alia*, approximately $4.7 million allegedly owed by LGR for maintenance of the equipment.  In February 2002, the parties entered into a settlement agreement ("Settlement Agreement") which resolved their disputes and dismissed the litigation.  After disputes arose again between the parties, Canon and LGR agreed to submit the remaining accounting issues to a Special Master.  On May 23, 2003, United States District Judge Claude M. Hilton ("Judge Hilton") entered an Order referring the matter to the Special Master.

On September 17, 2003, Canon filed the instant action, alleging actual fraud ("Count I"), constructive fraud ("Count II"), and several theories from breach of the Settlement Agreement ("Counts III-VII").  On December 2, 2003, LGR filed a motion for preliminary injunction seeking to prevent Canon from receiving or retaining any payments from Document Automation and Production Service ("DAPS") under a modified agreement that was payable to LGR prior to the modification.  On December 8, 2003, the Court entered an Order staying this matter pending the report

-2-

of the Special Master.  On December 23, 2003, the Court entered
an Order, ("Payment Order") requiring Canon to remit 77% of each
payment it receives from DAPS to LGR within 11 days of the
receipt of payment, and to account for the payments from DAPS and
the payments made to LGR.  By Order entered January 21, 2005,
("Modification Order") the Court required Canon to remit payments
to LGR on the 1st and 15th of each month that include all LGR
funds received by Canon up to and including twenty-one days
before the payment date, and to list all invoices Canon disputes
as not owing to LGR.

On March 11, 2005, Canon filed a motion to modify the
Court's December 23, 2003 Payment Order, as modified by the
Modification Order.  Canon sought modification of the Order to
permit Canon to deduct from future payments to LGR $108,295.88
which Canon alleges that LGR was not entitled to receive.  On
March 22, 2005, Defendant filed a motion to find Plaintiff in
civil contempt for engaging in self-help by withholding payments
prior to any judicial modification of the Payment Order.  On
April 1, 2005, Canon filed a motion to modify the Payment Order
to use funds payable to LGR pursuant to the Payment Order to pay
LGR's obligations to the Special Master in Civil Action No. 01-
1086-A, and thereafter to deposit remaining funds payable to LGR
in the registry of the Court pending the conclusion of
proceedings on the Special Master's report in Civil Action No.

-3-

01-1086-A.  On April 19, 2005, this Court denied Plaintiff's March 11th and April 1st motions to modify and granted Defendant's motion to hold Plaintiff in civil contempt.  A motion to reconsider the April 19, 2005 Order was denied by this Court on May 11, 2005.

On July 24, 2005, Plaintiff filed a motion to vacate the stay of this action entered on December 8, 2003.  Also within this motion, Plaintiff sought to authorize Canon to deposit into the registry of the Court all sums otherwise payable to LGR, pursuant to terms of its Payment Order entered December 23, 2003.  On September 23, 2005, this Court denied both aspects of the motion.  By Order of September 30, 2005, Judge Hilton adopted the Final Report of the Special Master, which the parties agreed would be final and non-appealable.  Certain issues, listed in Section J of the Final Report, were returned to the Special Master for resolution.  On October 7, 2005, Plaintiff filed a renewed motion to vacate the stay order entered on December 8, 2003 and to authorize payment into the Court registry all sums otherwise payable to LGR pursuant to the Payment Order entered December 23, 2003.  By an Order entered October 18, 2005, the renewed motion was denied.

The Special Master served the parties with his Supplemental Report addressing the Section J issues on April 4, 2006.  On May 31, 2006, Judge Hilton entered an Order adopting

-4-

the Supplemental Report and overruling the parties' objections to
it.  The Special Master's calculations in reconciliation of the
Settlement Agreement were incorporated into judgment entered by
Judge Hilton on August 28, 2006.  Judge Hilton entered judgment
for Canon in the amount of $1,141,818, or the amount that the
Special Master determined the Lease Payment Pool to be deficient.
Defendant paid this amount, with the remaining amount owed of
$2.9 million to be remitted via the Lease Payment Pool ("LPP"),
pursuant to the Settlement Agreement as reconciled by the Special
Master.  The LPP remains effective as the means of remitting the
remaining amount of liability, and Canon maintains a right to
draw the money owed from any lease payments made into the LPP.[1]

On June 23, 2006, Plaintiff filed a motion to vacate
the stay order entered on December 8, 2003 and a separate motion
to vacate the Payment Order entered on December 23, 2003.  On
July 20, 2006, the parties agreed by consent order to vacate the
stay order.  On July 24, 2006, this Court granted Plaintiff's
motion to vacate the Payment Order.  The instant action was
thereby allowed to proceed, and on April 11, 2007 Plaintiff filed

---

[1]Plaintiff has brought this action for judgment on the remaining amount
that was arranged to be paid to Canon through the LPP.  However, Plaintiff
simultaneously maintains a right to this money through the LPP.  Plaintiff
asked the Court at oral argument to "reward judgment and credit any amount
received through the LPP."  Plaintiff was afforded an opportunity before Judge
Hilton to obtain judgment on the remaining amount, but did elected instead to
obtain a deficiency judgment and reconcile the Settlement Agreement.  Thus,
when the Settlement Agreement was fully reconciled and deficiency judgment
entered, a final judgment on the merits was entered which applies to all of
Plaintiff's claims in this case.

a motion for partial summary judgment and a motion to dismiss Defendant LGR's counterclaims.  On April 13, 2007, Defendants filed a motion for summary judgment.  These motions are currently before the Court.

## II. Standard of Review

### A) Summary Judgment

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted).  In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 248-52.  Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant.  *Id.* at 248.

-6-

B) <u>Motion to Dismiss</u>

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

### III.  Analysis

A) <u>Officer Liability on Fraud Claims</u>

Plaintiff first alleges actual fraud ("Count I") and constructive fraud ("Count II") against both LGR and its president, Luis Rogers, who acted as LGR's agent in forming the

Settlement Agreement.  The fraud counts are premised upon alleged false statements and misrepresentations made in the course of Settlement Agreement relating to the LPP.

Under Virginia law, corporate officers may be held jointly and severally liable with their corporation for tortious conduct, including fraud, that subjects the corporation to liability.  *Sit-Set, A.G. v. Universal Jet Exchange, Inc.,* 747 F.2d 921, 929 (4th Cir. 1984).  In Counts I and II, Plaintiff alleges actual and constructive fraud against both LGR and Louis G. Rogers ("Rogers") arising from representations and warranties made in Article 3.1 of the Settlement Agreement regarding the LPP.  Plaintiff alleges that Rogers made fraudulent misrepresentations on behalf of LGR, to Canon, which Canon relied upon in agreeing to settle the action.  Accordingly, both Defendants may be held jointly and severally liable for any valid claims of fraud, and this Court will focus on the issue of *res judicata*.

B)  <u>Preclusive Effect on Plaintiff's Claims</u>

*Res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by parties or their privies based on the same cause of action.[2]  *Harnett v. Billman,*

---

[2]At oral argument, Plaintiff argued that while the Special Master's findings "have relevance to this action and are determinative of the issues raised in this case[,] ... the preclusive effect of those findings is predominately as to issues rather than claims."  (Pl.'s Mot. Summ. J. at 13-14).  Plaintiff explained its position that collateral estoppel should apply to the issues resolved by the Special Master, barring re-litigation of those particular issues.  Collateral estoppel forecloses "the relitigation of issues

-8-

800 F.2d 1308, 1312 (4th Cir. 1986).   The preclusive effect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for "[n]ot only does *res judicata* bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."   *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.,* 892 F.2d 355, 359 (4th Cir. 1989).   A party invoking *res judicata* must establish three elements: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."   *Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir. 1991).   Here, the parties are identical and a final judgment was entered by Judge Hilton.   However, the parties dispute that the

---

of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Virginia Hosp. Ass'n. v. Baliles,* 830 F.2d 1308, 1311 (4th Cir.1987) (citation omitted).  For this doctrine to apply, the party asserting it must establish five elements: (1) the issue precluded must be identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.  *See Ramsay v. I.N.S.,* 14 F.3d 206, 210 (4th Cir. 1994). Defendants are not attempting to re-litigate factual or legal issues resolved by the Special Master and adopted by Jude Hilton's order.  Accordingly, collateral estoppel is not applicable.

causes of action are identical and thus precluded under *res judicata.*

The appropriate inquiry to determine cause of action identity for claim preclusion purposes is whether the claim presented in the new litigation "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Pittston Co. v. United States,* 199 F.3d 694, 704 (4th Cir. 1999)(quoting *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986)). Under this construction, claims are part of the same cause of action when they arose out of the same transaction or series of transactions, or the same core of operative facts. *First Union,* 81 F.3d at 1316. *See also Pittston,* 199 F.3d at 704 (the expression "transaction" in the claim preclusion context "connotes a natural grouping or common nucleus of operative facts").

No simple test exists to determine whether causes of action are identical for claim preclusion purposes, and each case must be determined separately within the conceptual framework of the doctrine. *See Pittston,* 199 F.3d at 704 (citing *Aliff v. Joy Mfg. Co.,* 914 F.2d 39, 43 (4th Cir. 1990)). A court must balance the interests of the defendant and of the courts in bringing litigation to a close against the interest of the plaintiff in not being denied the right to prosecute a valid claim. *Id.* Among the factors to be considered in deciding whether the facts

-10-

of the current and prior claims "are so woven together" that they constitute a single claim are "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *See id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b.); *see also Davenport v. North Carolina Dep't of Transp.,* 3 F.3d 89, 97 n.8 (4th Cir. 1993).

When claims arise out a single nucleus of operative fact (or the same "transaction"), they will be barred even if they involve different harms or different legal theories. *Anyanwutaku,* 85 F. Supp. 2d at 571; *White v. Harris,* 23 F. Supp. 2d 611, 616 (D. Md. 1998). Accordingly, this Court will proceed with an analysis of the claims raised in Counts I through VII and determine which claims are identical to those that were raised, or could have been raised and resolved by the Special Master and incorporated into Judge Hilton's Order.

1) <u>Scope of the Prior Judgments</u>

The subject of the Special Master's report was the full reconciliation of the "parties' accounts and [calculation of] the final dollar amount due to Canon, net of all payments made by and credits due to LGR, pursuant to the terms of the Settlement Agreement." (Def.'s Mot Ex. 2). The duties of the Special Master included determination and reconciliation of, *inter alia,* (1) the sum total of invoices comprising the LPP; (2) the sum total of payments with respect to the LPP sent to LGR but not deposited into the Escrow Account; (3) the amounts paid to Canon

-11-

and owed by LGR for undocumented leases; (4) the amounts paid to Canon and owed by LGR for dealer maintenance payments received by LGR; (5) the determination of disputed lease payments received by LGR. *Id.* at 7-8. After this full reconciliation was completed, Judge Hilton denied the objections of the parties and adopted the Final Report by order dated September 30, 2005, but returned a number of issues to the Special Master for further reconciliation. The Special Master then issued a Supplemental Report on March 30, 2006. Again, Judge Hilton overruled the objections of both parties and adopted the Special Master's Supplemental Report by Order dated May 31, 2006.

2) <u>Counts I and II</u>

The Court must first determine if Plaintiff's claims for actual and constructive fraud arise from the same transaction as the Special Master's reconciliation and deficiency judgment. Plaintiff alleges fraud on the grounds that the $3,898,338 figure representing the amount of unpaid invoices comprising the LPP was false, because the actual sum of invoices amounted to $3,871,627, and $495,325 had been paid to LGR prior to the date of the Settlement Agreement. (Pl.'s Mot. Summ. J. at 12). Plaintiff further claims that $277,349 of the invoices related to Disputed Leases, rendering the actual value of the LPP to be $799,386 less than that represented in the Settlement Agreement. Plaintiff argues that it relied upon this figure, and "would not have executed the Settlement Agreement as drafted if the value of the

-12-

Lease Payment Pool had been significantly smaller than $3.9 million." (Pl.'s Mot. Summ. J. at 13)(citing Lane Aff. ¶¶ 4-7). In short, the "nucleus of operative facts" from which these two claims arise are discrepancies between the represented dollar amounts of the leases to be included in the LPP and the actual amounts after accounting for LPP payments received by LGR prior to entry into the Settlement Agreement.

While both actual and constructive fraud are technically different legal causes of action, *res judicata* will apply to claims that arise out a single nucleus of operative fact even if they involve different harms or different legal theories. *Anyanwutaku,* 85 F. Supp. 2d at 571.  It is clear that the two fraud claims arise from the same nucleus of operative fact as the claims resolved by the Special Master.[3]  As noted *supra, res judicata* will preclude the claims that have been or should have been resolved by the Special Master's report adopted by Judge Hilton and entered into final judgment.  It is undisputed that the scope of the Special Master's duties included resolution of "the sum total of invoices comprising the LPP."  (Def.'s Mot. Ex. A at 7).  The Special Master's reconciliation accounted for the amount of LPP payments received by LGR prior to the entry of the

---

[3]Plaintiff argues that Judge Hilton's judgment order leaves an additional 2.9 million outstanding, and now asks this Court for judgment. This assertion, while technically true, is not entirely correct.  Judge Hilton's order was indeed premised on the Special Master's deficiency determination for the LPP, and did not include the remaining amounts owed to Canon through the Settlement Agreement as reconciled by the Special Master.

Settlement Agreement to be $495,325 and the amount of disputed leases to be $277,349.  These amounts were factored into the final reconciliation, and subtracted from the LPP by the Special Master in his final calculation of the LPP deficiency.[4]  The total amount of deficiency was determined to be $1,141,818, and has been paid by Defendant.

Thus, the only claim in Plaintiff's fraud counts that was not directly resolved by the Special Master is the claim that the initial LPP was $26,712 less than LGR had warranted. Nonetheless, this claim still arises from a common nucleus of operative fact as the bulk of the fraud claim, and Plaintiff cannot survive summary judgment by simply tacking on an additional dollar amount.  The fact remains that the Special Master fully reconciled the differences between the represented and actual values of the LPP leases and final judgment was entered as to the discrepancy.  Plaintiff did not raise allegations of fraud to nullify the Settlement Agreement, but rather consented to judgment of reconciliation.  Accordingly, Plaintiff was afforded an opportunity to litigate its claim and waived the right to add this new ground.  Plaintiff cannot now raise a claim that it "would not have executed the Settlement

---

[4]It is notable that Plaintiff named an additional party, Rogers, in the matter before this Court.  However, as noted above, *res judicata* applies to parties and their privies, and it is clear that Rogers acted as an agent of LGR when he signed the contract.  Thus, *res judicata* will bar the claims against him as well as those against LGR.  *See Sisti v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 77 F.3d 471 (4th Cir. 1996).

Agreement as drafted" had it known the value of the LPP was "significantly smaller than $3.9 million." (Lane Aff. ¶¶ 4-7). Plaintiff received a final judgment addressing deficiencies in this amount, and its remaining causes of action for fraud arose from the same exact factual nexus. Accordingly, summary judgment will be entered for Defendants dismissing Counts I and II.

        3) <u>Count III</u>

        In Count III, Plaintiff alleges that LGR breached the Settlement Agreement by failing to deposit payments made with respect to invoices in the LPP into the settlement Escrow Account. This claim also arises from a common nucleus of operative fact as that resolved by the Special Master and incorporated into final judgment. Again, it is undisputed that the scope of the Special Master's duties included resolution of the sum total of payments with respect to the LPP sent to LGR but not deposited into the Escrow Account. (Def.'s Mot. Ex. A at 7). Performing this duty, the Special Master determined that LGR received at least $116,038 in LPP invoice payments after the date of settlement, but failed to deposit those funds into Escrow. The $116,038 amount was deducted from the reconciled LPP and factored into the $1,114,818 judgment awarded to Plaintiff in the prior proceeding. Thus, the claim now raised by Plaintiff seeking an award of the same amount of money for the same factual occurrence arises from a "common nucleus of operative fact" as that resolved by the Special Master, and is precluded by *res*

-15-

*judicata.* Accordingly, Plaintiff's motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted on Count III.

    4) <u>Count IV: Financing of Undocumented Leases</u>

    In Count IV, Plaintiff alleges that LGR failed to pay for equipment covered by undocumented leases for which LGR obtained bank financing. Again, the scope of the Special Master's duties included a reconciliation of the amounts paid to Canon and owed by LGR for undocumented leases. (Def.'s Mot. Ex. A at 7-8). The unpaid equipment invoices were factored into the Special Master's final reconciliation. (Special Master Supp. Report at Illustration 8). Thus, Plaintiff's new claim arises from the same common nucleus of operative fact as the claim resolved and incorporated into final judgment, and is precluded by *res judicata.* Accordingly, Plaintiff's motion for summary judgment will be denied and Defendant's cross-motion for summary judgment will be granted on this Count.

    5) <u>Counts V and VI: Dealer Payments and Breach of</u>
       <u>Master Lease Finance Agreement</u>

    In Counts V and VI, Plaintiff alleges that LGR failed to pay for dealer maintenance payments and breached the master lease finance agreement. The scope of the Special Master's duties included reconciliation of the amounts paid to Canon and owed by LGR for dealer maintenance payments received by LGR. (Def.'s Mot. Ex. 2 at 8). The unpaid maintenance payments were

-16-

specifically addressed by the Special Master, who awarded
Plaintiff a credit of $2,827,322 for unpaid dealer maintenance
payments, and this amount was then incorporated into the final
deficiency judgment.  Thus, the claims now raised by Plaintiff
seeking an award of the same amount of money for the same factual
occurrence or "common nuclei of operative facts" have been
previously decided, and are precluded by *res judicata.*
Accordingly, Plaintiff's motion for summary judgment will be
denied and Defendant's cross-motion for summary judgment will be
granted on these Counts.

      6) <u>Count VII: Disputed Leases</u>

In Count VII, Plaintiff alleges that LGR received lease
payments related to disputed leases that belonged to Plaintiff in
the amount of $665,069.  Again, the scope of the Special Master's
duties included a reconciliation of the amounts of disputed lease
payments received by LGR.  (Def.'s Mot. Ex. 2 at 8).  These
claims were specifically addressed by the Special Master, who
awarded Plaintiff a credit of $665,069 for unpaid dealer
maintenance payments.  Thus, the claim now raised by Plaintiff
seeking an award of the same amount of money for the same factual
occurrence arises from a "common nucleus of operative fact" as
that previously resolved, and is precluded by *res judicata.*
Accordingly, Plaintiff's motion for summary judgment will be
denied and Defendant's cross-motion for summary judgment will be

-17-

granted on this Count. This amount was then incorporated into
final judgment.

      7) <u>Conclusion on Plaintiff's Claims</u>

      The causes of action raised by Plaintiff in this suit,
seeking judgment on the dollar amounts of the claims for
deficiency resolved by the Special Master, clearly arise from the
same transaction or series of transactions as the claim resolved
by the prior judgment.  This Court does not agree with Plaintiff
that it should be free to seek judgment in this Court for the
claims already resolved by the Special Master and factored into a
the reconciliation and deficiency judgment.  Plaintiff is on one
hand seeking a preclusive effect, and on the other asking the
Court to ignore the previous judgment and reconciliation of the
Settlement Agreement and enter a new judgment.  Furthermore, the
LPP is still active and may now be used as the means of
settlement.

      The record indicates that Judge Hilton refrained from
entering a full judgment because after nearly four years of
litigation, the Settlement Agreement was finally reconciled and
corrected by a full accounting.  It now reflects an accurate
amount of lease payments to which Canon is entitled, and should
have eliminated any reluctance by the parties to utilize it.  The
LPP currently remains effective as the means of settlement
payment, and Canon is now able to draw upon the LPP in order to
satisfy the Settlement Agreement.  In this sense, there is still

-18-

"liability outstanding" as Plaintiff argues.  However, Canon is still entitled to the amount of money requested through the LPP-- the mechanism set up through the Settlement Agreement.  The parties spent years working with the Special Master and Judge Hilton to get the LPP corrected in order for the settlement to be enforced.  Because the settlement mechanism has not been abandoned and the Settlement Agreement has been reconciled and fully enforceable, this Court's granting judgment on the total amount to be paid by the LPP would essentially duplicate damages. Plaintiff remains entitled to payment through the Settlement Agreement, and this Court will not interfere with that mechanism. Finally, Plaintiff's suggestion that any future payments made through the LPP be credited against judgment would only further complicate a resolution of the amounts owed and ultimately lead the parties back to this Court every time payment is received through the LPP.  Thus, the parties are left better served by utilizing their own settlement mechanism and this Court will not enter a separate order of damages.

C) <u>Motion to Dismiss Defendant LGR's Counterclaims:</u>

1) <u>Counterclaim Count I: Breach of Contract</u>

In examining Defendant's counterclaims, this Court agrees with Plaintiff that the claim for breach is, on its face, "exceedingly vague."  However, Defendant clarifies its bases for breach of contract claims on "whether it is a third party beneficiary to the BPA [Blanket Purchase Agreement], the

-19-

continued force and effect of the 1993 Letter Agreement for prior transactions between the parties, and LGR's right to recover under the theory of *quantum meruit*." (Def.'s Opp. Brf. at 9). Accordingly, the Court will determine if Defendant has stated a claim for breach of contract on each of these theories.[5]

a) The 1993 Letter Agreement

The parties agree that the 1993 Letter Agreement was terminated pursuant to Article 11.7 of the Settlement Agreement, executed in 2002.  Thus, neither party retains the right to sue on this terminated agreement.  Pursuant to the Settlement Agreement, pre-existing transactions between Canon on LGR shall be governed by the Lease Buy-Back Agreement ("LBB") executed on February 8, 2002.  However, nothing in that agreement relates to modifications of ancillary agreements between DAPS and Canon. Accordingly, this Court finds no direct contractual cause of action arising from the 1993 Agreement.

b) The BPA

Defendants next claim breach on a third-party beneficiary theory under the BPA between the Defense Automated Production Service ("DAPS") and Canon.[6]  Virginia law "enables a

---

[5]LGR has agreed to withdraw its Counterclaims for intentional misrepresentation ("Counterclaim III"); negligent misrepresentation ("Counterclaim IV"); and fraud ("Counterclaim V").  Accordingly, the Court will permit withdrawal and dismiss these Counterclaims without addressing them.

[6]Because Defendant's counterclaim rests upon third-party beneficiary status, the Court will not address the various arguments raised regarding privity of contract with the Government.  These arguments are irrelevant to the issue at hand.

-20-

third party to take an interest under an instrument, although not a party to it, if the promise is made for the third party's benefit and the evidence shows that the contracting parties *clearly and definitely intended* to confer a benefit upon such third party." *BIS Computer Solutions, Inc. v. City of Richmond,* 122 Fed. Appx. 608, 611 (4th Cir. 2005)(quoting *Ashmore v. Herbie Morewitz, Inc.,* 475 S.E.2d 271, 275 (Va. 1996) (emphasis added)). However, "a person who benefits only incidentally from a contract between others cannot sue thereon." *Copenhaver v. Rogers,* 384 S.E.2d 593, 596 (Va. 1989).

LGR was never mentioned in the original BPA, but did finance some of the leases involved.  In 1999, DAPS and Canon agreed to modify the agreement and name LGR as the "lessor" in order to facilitate payments to LGR on the leases it financed, but LGR was not made a party to the contract.  In October 2000, the Defense Finance and Accounting Service ("DFAS") determined that naming LGR the "lessor" was improper, and required removal of reference to LGR as the lessor.  This was done in December 2000.  DAPS and Canon made an additional modification in September 2003, by which all payments on new purchase orders would be made to Canon rather than LGR.

Based upon these events, LGR claims that it "clearly has third party beneficiary rights which include a right to damages for Canon's unilateral modification to the BPA that eliminated LGR's rights to lease payments."  (Def.'s Opp. Brf. at

-21-

10).  LGR argues that the "unilateral modification" of the BPA in
September 2003 improperly eliminated LGR's rights to lease
payments. (Def.'s Opp. Brf. at 10-11).  However, none of the
agreements between Canon and LGR required that the lease payments
be made directly from DAPS to LGR, and Defendant was never given
an actual assignment of rights to direct payment under the
contract.

The only act that could be construed as assignment of
the right to direct payment was the 1999 amendment.  However, the
DFAS determined that this modification was improperly added and
"absent a proper assignment of claims."  (Pl.'s Ex. 3).  Thus,
the initial assignment of third party right to direct payment by
DAPS was never valid, and Defendant had no rights in the contract
between Canon and DAPS.  *See, e.g., NGC Investment and
Development, Inc. v. United States,* 33 Fed. Cl. 459, 463-64 (Ct.
Cl. 1995)(holding assignment violative of the Anti-Assignment Act
void and passing no legal or equitable title).

However, while Defendant had no assigned right under
the DAPS/Canon agreement to *direct payment* by DAPS, Plaintiff
concedes that LGR had a third-party right to insist upon payment
by Canon.  (Pl.'s Reply Brf. at 4)("While [LGR] could, *as a
third-party beneficiary* of the Canon-DAPS BPA, insist on payment,
it could not insist on the form of payment absent express
agreement.")(emphasis added).  It is undisputed that LGR is
entitled to 77% of the funds received by Canon after the

-22-

modification was made, and this Court has already ordered regular, bi-monthly payment of this percentage by Canon to LGR. (*See* December 23, 3003 Order).  While Canon honored this order for a period of time, the arguments currently raised before the Court suggest that payments ceased in or around August 2006. This is an issue of material fact that remains in contention. Accordingly, LGR's cause of action for recovery on a third-party beneficiary theory will remain, and the Court will neither dismiss nor enter summary judgment on this issue.

c) Quantum Meruit Theory

A claim for *quantum meruit* is a separate cause of action from breach of express contract.  *Reo Distribution Services, Inc. v. Fisher Controls Intern., Inc.,* 985 F. Supp. 647, 652-53 (W.D. Va. 1995).  However, it is possible to plead a claim for *quantum meruit* without expressly stating a cause of action, so long as facts alleging *quantum meruit* are properly pled.  *See, e.g., Dweck Law Firm, LLP v. Mann,* 2004 WL 2202587 at *3 (S.D.N.Y. 2004)(citing *Matarese v. Moore-McCormack Lines, Inc.,* 158 F.2d 631, 633 (2d Cir. 1946)(holding that, under the Federal Rules of Civil Procedure, a plaintiff may recover in *quantum meruit* even where only an express contract has been pled).  Under Virginia law, to state a claim for *quantum meruit* a party must plead: (1) a benefit conferred on the defendant by the plaintiff; (2) defendant's knowledge of the benefit conferred;

-23-

(3) acceptance or retention of the benefit by defendant that render it inequitable for the defendant to retain the benefit without paying for its value.  *Centex Constr. v. Acstar Ins. Co.,* 448 F. Supp. 2d 697, 706 (E.D. Va. 2006).

In this case, while LGR did not specifically plead a cause of action for *quantum meruit*, it did properly allege facts constituting a cause of action under this theory of recovery. LGR alleged the knowing retention of lease payments owed to it by Canon, which were received from DAPS. (LGR Compl. ¶¶ 20-29). Thus, while the stated cause of action was breach of express contract, LGR properly alleged an alternative cause of action for *quantum meruit*.  Accordingly, Plaintiff's motion to dismiss will be denied on this ground.

2) <u>Counterclaim Count II: Intentional Interference with Contract</u>

The elements required for a tortious interference with contract cause of action are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  *Chaves v. Johnson,* 335 S.E.2d 97, 102 (Va. 1985). The contracts at issue in the counterclaims are lease contracts between Canon and government lessees, to which LGR claims a third

-24-

party beneficiary status.  Hence, LGR claims tortious interference arising from Canon's modification of its own contract.  Under Virginia law, it is axiomatic that a party cannot interfere with its own contract, *Id.*  Because this claim is based upon just that--Canon's alleged interference with its own contract--LGR has failed to state a claim for which relief may be granted.  Accordingly, Plaintiff's motion to dismiss will be granted for Count II of LGR's counterclaims.

### 2) Counterclaim Count VI: Common Law Conspiracy

A common law conspiracy exists under Virginia law where "two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose, or some lawful purpose by a criminal or unlawful means." *Commercial Business Systems, Inc. v. Bellsouth Services, Inc.,* 453 S.E.2d 261, 267 (Va. 1995). The foundation of a civil conspiracy is damage caused by the acts committed in furtherance of the conspiracy.  *Id.*  Mere conclusory language is insufficient to state a cause of action for civil conspiracy under Virginia law.  *See Bowman v. State Bank of Keysville,* 331 S.E.2d 797, 802 (Va. 1985).

LGR alleges that the unlawful purposes of the civil conspiracy were intentional interference with contract and breach of contract.  Under Virginia law, when the objective of a conspiracy is to interfere with a contract, the elements of tortious interference must all be present.  *Stauffer v. Fredericksburg Ramada, Inc.,* 411 F. Supp. 1136, 1138 (E.D. Va.

-25-

1976).  Because LGR failed to state a claim for tortious interference with contract, conspiracy cannot exist on this ground.

Furthermore, although Virginia recognizes that a party to the contract may be held liable as a co-conspirator to induce breach of the same, there must be a person or entity not a party to the contract among the conspirators in order to satisfy the elements of the underlying tort.  *See id.* at 1139.  In this case, the two alleged co-conspirators are both parties to the contract. Thus, LGR fails to properly allege facts which could constitute a claim for common law conspiracy.  Accordingly, Count VI of the counterclaims will be dismissed.

### III. Conclusion

For the reasons stated above, the Court will grant Defendant's motion for summary judgment on Counts I-VII; grant Plaintiff's motion to dismiss Counts II and VI of Defendant LGR's counterclaims, and deny Plaintiff's motion to dismiss or grant judgment on Count I.  Counts III-V of Defendant LGR's counterclaims will be dismissed without prejudice.

May 21, 2007                    _____/s/_____
Alexandria, Virginia                  James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE

-26-